UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FEDERAL TRADE COMMSSION<br><br>      Plaintiff,<br><br>      v.<br><br>SUPERIOR PRODUCTS<br>INTERNATIONAL II, INC., a corporation,<br>and<br><br>JOSEPH E. PRITCHETT, individually and<br>as an officer of SUPERIOR PRODUCTS<br>INTERNATIONAL II, INC.,<br><br>      Defendants. | Case No._____<br><br>**COMPLAINT FOR PERMANENT<br>INJUNCTION AND OTHER EQUITABLE<br>RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain permanent injunctive relief, rescission or

reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten

monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a).

2.      Defendants market their Super Therm and Sunshield roof and wall coatings using

deceptive energy savings claims and claims related to R-values, which measure the insulating

ability of a material, including home insulation.

3.      Defendants claim that their Super Therm and Sunshield products provide

significant energy savings for consumers when applied to a home or other building.  They also

claim those products have R-values and R-value equivalents of R-19, and consequently, also provide significant energy savings for consumers when applied to a home or other building.

4.     However, these claims are false.  Therefore, Defendants cannot substantiate them. In fact, Defendants' coatings have R-values that are substantially less than one when applied as Defendants instruct, and Defendants' purported substantiation demonstrates their products do not provide the advertised energy savings.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2).

## PLAINTIFF

7.     The FTC is an independent agency of the United States created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

8.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. § 53(b).

## DEFENDANTS

9.     Defendant Superior Products International II, Inc. ("Superior Products") is a Kansas corporation with its principal place of business at 10835 W 78th St, Shawnee, Kansas 66214.  Superior Products transacts or has transacted business in this District and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others,

Superior Products has advertised, marketed, distributed, or sold its Super Therm and Sunshield coatings to consumers throughout the United States.

10.     Defendant J.E. Pritchett ("Pritchett") is the President and founder of Superior Products.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts of Superior Products, including the acts and practices set forth in the Complaint.  Defendant Pritchett resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District.

## COMMERCE

11.     At all times material to this Complaint, Defendants maintained a substantial course of trade in or affecting "commerce," as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

12.     Defendants manufacture and market coatings designed for residential, industrial, and commercial applications, including "Super Therm" and "Sunshield."

13.     Coating products are marketed for application on homes and buildings and include paint, paint with additives (such as ceramic spheres), varnishes, lacquers, and products that incorporate such coatings.

14.      Defendants claim that Super Therm is a water-borne combination of aliphatic acrylics, urethanes and resin additives that contains four types of ceramic particles that allow it "to block heat gain into the surface upon which the coating film is applied."  Defendants also claim that Super Therm is an "[i]nsulation coating to create [sic] thermal barrier on substrates,"

including "[a]s a one-coast insulation system on exteriors" and "[a]s an insulation system for interior applications."  Super Therm retails for $108.50 per gallon.

15.    Defendants claim Sunshield is a water-borne combination of elastomeric acrylic and resin additives that includes four different ceramics that provide it "both heat reflectivity and insulating properties."  On their website, Defendants claim that Sunshield has "similar performance characteristics to Super Therm," but does not provide "the same benefits."  Sunshield retails for $60 per gallon.

16.    Since at least 2008, Defendants have disseminated or caused the dissemination of advertising, packaging, and promotional materials for Super Therm and Sunshield, including through advertisements on their website and marketing materials for their distributors.

17.    In these materials, Defendants describe Super Therm's performance in terms of R-values and R-value equivalents.  For example, they advertise that Super Therm provides a "benefit comparable to R 19" when applied 0.01 inches thick.  **Exhibit A** at 1.

18.    R-value is a measurement of resistance to heat flow.  *See* FTC's Trade Regulation Rule Concerning the Labeling and Advertising of Home Insulation ("R-value Rule" or "Rule"), 16 C.F.R. Part 460 (initially issued in 1980 and last amended in 2019).  The greater the R-value, the greater the reduction in heat flow, and the more energy may be saved to heat or cool a building.  70 Fed. Reg. 31,258 (2005).

19.    Different products have different R-values.  For example, fiberglass batt is among the most common insulating materials in the United States.  It generally has an R-value of R-3.0 to R-3.8 per inch.  Other popular insulation materials, polyisocyanurate or polyurethane foam, have R-values of R-5.6 to R-8.0 per inch.  Consumers typically apply those materials several inches thick to provide the desired level of insulation.  By comparison, hardwood has an R-value

of R-0.9 per inch.  Poured concrete has an R-value of about R-0.08 per inch, making it a poor insulator.

20.     The U.S. Department of Energy recommends levels of insulation for homes.  It divides the country into eight climate zones and lists R-values for each zone.  Most of Kansas is in Zone 4.  The Department recommends homes in this zone have R-38 to R-60 insulation in the attic and R-13 to R-15 insulation in the walls.  Thus, if such a home uses fiberglass batt (at R-3.8 per inch), it should have at least 10 inches of the batt in its attic.  By comparison, Miami, Florida is in Zone 1 where the Department recommends R-30 to R-49 for attics.  For the coldest zone, Zone 8, the Department recommends attic insulation of R-49 to R-60.

21.     Defendants' conduct is ongoing as of the filing of this Complaint.

22.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## DEFENDANTS CLAIM SUPER THERM HAS AN R-VALUE OF R-19 OR IS EQUIVALENT TO R-19 AND THAT SUNSHIELD IS SIMILAR

23.     Defendants claim in marketing materials that a 0.01-inch thick coat of Super Therm provides a "benefit comparable to R 19," has "a R-19 [e]quivalent [r]ating," and has the same insulating qualities as six inches of "traditional fiberglass insulation."  *See* **Exhibit A** at 1; **Exhibit B** at 6.

24.     Defendants claim Sunshield is a "[c]ost-efficient alternative with similar performance characteristics to Super Therm."

25.      In 2008, Superior Products started using a brochure, which it posted on its website – where it remained until the FTC contacted Defendants in April 2019 as part of the

investigation that lead to this suit.  That brochure expressly claims Super Therm has "a R-19 [e]quivalent [r]ating" when applied 0.01 inches thick.  *See* **Exhibit B** at 6.

26.     Superior Products bolstered this claim by stating in the same brochure that Super Therm is "Approved" to have an "RE19" R-value at a 0.01-inch thickness, with "RE" meaning an R-value equivalent.  **Exhibit B** at 5.

27.     The 2008 brochure further claims Super Therm has an "RE19" R-value whether applied to the "[i]nterior" or "[e]xterior" of a building.  **Exhibit B** at 5.  It explains this feature by claiming, "SUPER THERM holds heat inside the room in the winter by not loading the heat which would be absorbed into the wall to be transferred and lost to the cold.  The ceramics will not load the heat and allow the normal transfer."  **Exhibit B** at 4.  In this way, Defendants market Super Therm not merely as a product that reflects the Sun's heat, but as a product that performs as traditional home insulation.

28.     The 2008 brochure remains on the website of some Superior Products distributors.

29.     Pritchett stated his goal when developing Super Therm was to create a product "that could compete with or compliment batt forms of installed insulation."

30.     Superior Products also created a "Technical Data Sheet" about Super Therm that it posted on the company's website and includes with shipments of Super Therm.  Under "Tests and Certifications," the March 1, 2019 version of the data sheet claims: "Exterior insulation against Solar Radiation – benefit comparable to R 19" and references several standardized test methods used to determine R-value.  **Exhibit A** at 1.



**TESTS AND CERTIFICATIONS (partial list)**
1. Exterior insulation against Solar Radiation - benefit comparable to R 19
2. Blocks 99.5% of infrared / up to 68% sound blockage
3. Interior- ASTM C1363 (Guarded Hot Box), E1269 and E1461-92 (Blocking heat through coating Film

31.     A video on Superior Products's website, as of April 2019, claims: "With one coating [of Super Therm] at 16mils wet, or 10mil dry, you're going to get an R-20 R-factor equivalence."

32.     Pritchett personally makes unsubstantiated R-value claims about Super Therm. An article about Super Therm on www.bobvila.com, a popular home improvement website, quotes Pritchett throughout and states: "SuperTherm achieves an R-19 rating with one coat applied, and a rating of R-28.5 when the surface is coated on the exterior and interior."  *See* **Exhibit C** at 1-2.

33.     In a patent application to the U.S. Government for a method of applying a coating, Pritchett claims: "it has been found that the equivalent R value (thermal resistance) of a single coat of Super Therm® is R-19 equivalence."

34.     Defendants bolster their express R-value claims by comparing Super Therm to products with known R-values and implying that Super Therm has that level of R-value.

35.     Traditional fiberglass insulation, for example, has an R-value of about R-3.0 per inch; six inches of that insulation is R-18.  Pritchett claims Super Therm has an R-value of "about that of a fiberglass batt having a thickness of six inches."

36.     Until contacted by the FTC, the Superior Products website repeated Pritchett's six-inch claim, in which it claimed: "A layer of Super Therm, the thickness of a business card, has the same insulation value as 6 inches of traditional insulation by blocking the initial loading of heat so that the heat available for conduction is reduced."  The 2008 Super Therm brochure mirrors that claim, stating, "[i]n fact, a layer of SUPER THERM no thicker than a single business card provides the same protection as 6 inches of fiberglass," accompanied by the following visual and express "R-19 Equivalent" claim:



**Exhibit B** at 6.

37.     In addition, the product label on containers of Super Therm in 2019 claims: "Insulating equivalent better than batt insulation due to [heat] load reduced."

38.     Defendants make further claims in the 2008 brochure and on their website as late as April 2019, including expressly claiming Super Therm has an "RE19" R-value and suggesting it is equivalent to *ten* inches of fiberglass (R-value of approximately R-30), eight inches of cellulose filler (R-value of approximately R-25), and 5.5 inches polystyrene foam (R-value of approximately R-25) by using the visual below:



**Exhibit B** at 5.

39.     When contacted by the FTC, Defendants removed certain R-value claims from their website.  Nonetheless, R-value and R-value equivalent claims still appear on Superior Products' website and, as late as October 2019, in its technical brochure for Super Therm (claiming "R 19" equivalency).  For example, a part of Defendants' current website sub-titled, "Reflective Coating vs. Fiberglass vs. SUPER THERM," compares fiberglass insulation to Super Therm.  Defendants state "Fiberglass has only an 'R 19' value when it is a full 6 inches."  They

then claim that a 0.01-inch coating of "Super Therm was tested in the lab and found to have" a "better" R-value, by about 70%, than a test sample of 3-inches of fiberglass.

## DEFENDANTS CLAIM THAT SUPER THERM AND SUNSHIELD SAVE CONSUMERS MONEY

40.     Defendants claim that using Super Therm "reduc[es] important energy costs," results in "[e]nergy savings," and brings about "cost-saving, long-term energy efficiencies." *See, e.g.*, **Exhibit D** at 2.  They also claim that Sunshield provides "similar performance characteristics to Super Therm."

41.     In 2015, Defendants added a second brochure to their website, which remains on the site today.  This brochure makes energy savings claims about Super Therm.  Under the heading "PROVEN ENERGY EFFICIENCY," the brochure claims a "26% - 30% increase in energy efficiency" in "Interior Temperature Performance" attributed to analysis by the U.S. Department of Energy.  **Exhibit D** at 4.  It also claims "22% overall energy reduction with 40% HVAC savings" as a result of Super Therm being applied at an airport terminal.  **Exhibit D** at 4.

42.     Defendants also included on their website (as of April 2019) a number of specific claims about substantial energy savings achieved by using Super Therm, for example:

a.   Under the title, "Energy Saving Products," the website claims "[s]hown in field usage to save between 40% and 70%."

b.   "Energy Efficient – Energy savings of 20-70% (field results as given by customers' own testing, such as Sony."

c.    "**FACT:** Sony Corporation coats roof and walls of one monitored building with SUPER THERM and finds a 78% reduction in total energy consumption."

    d.   "**FACT:** Florida Department of Energy Specialist documents . . . 30% utility savings on homes in Florida (hot humid climates) and in Denver (dry climates) as well as steel containers."

    e.   "**FACT:** German Mechanical Engineer in Construction Physics makes study of home coated with SUPER THERM and finds 76% less energy usage from SUPER THERM as compared to fiberglass and rock wool."

    f.   "**FACT:** Total house application cost is paid with energy savings in 2-4 years."

43.    Pritchett has personally made energy savings claims about Super Therm.  On the popular home improvement website, bobvila.com, Pritchett claims: "We estimate that a home can save up to 40 to 50 percent in energy costs using our product."  **Exhibit C** at 2.

44.    After the FTC identified the claims in Paragraph 42, Superior Products removed them from its website, but maintained other energy savings claims.  For example, Defendants continued to claim that applying Super Therm to the roof of a building resulted in "total utility savings of $22,144 (22%) in August for the total facility and the A/C portion of the total utility being 55%, this relates to a 40% savings in A/C operational cost."

## DEFENDANTS CLAIM THAT TESTING ESTABLISHES THEIR R-VALUES

45.    Defendants expressly claim that testing supports their R-value claims of R-19.

46.    For example, Superior Products created a March 1, 2019 "Technical Data Sheet" about Super Therm, which it posts on the company's website and includes with shipments of Super Therm.  Under the heading, "Tests and Certifications," the data sheet claims: "Exterior insulation against Solar Radiation – benefit comparable to R 19."  **Exhibit A** at 1.

47.    In support of Superior Products' R-value claims, Defendants have circulated to their distributors several letters and reports purporting to show that Super Therm has an R-value

of R-19.  For example, in January 1997, the Thermophysical Properties Research Laboratory, Inc. ("TPRL") produced a report for Superior Products titled, "Thermophysical Properties of SUPER THERM Coating, Report No. 1780."  Although the report does not state an R-value or even use the term "R-value," Defendants provided the report to distributors and used it in a promotional video also given to distributors in which Defendants claim the report supports their R-19 claims.

48.     On March 7, 1997, a TPRL researcher wrote a two-sentence letter to Defendants that contained an R-19 claim, which Defendants then circulated to distributors.  The letter states:

> I have reviewed the information provided by Superior Products
> International II, Inc. on the thermal performance of Super Therm.
> The combination of it's[sic] reflectivity, emissivity and thermal
> conductivity allows it to be a thermal resistor as effectively as
> fiberglass with a R 19 rating as shown by the Hot Box Test.

49.     Superior Products also circulated a one-page letter from VTEC Laboratories, Inc. to its distributors.  The January 28, 1998 letter claims: "As stated in the testing report performed at the [sic] Thermophysical Properties Research Laboratory, Inc., the calculated R-value [of Super Therm] is to be RE-19."  Superior Products created a video that visually showcased the afore-quoted sentence and the January 1997 TPRL report, with the voiceover claiming:

> In fact, independent laboratory tests, such as the one conducted by
> Thermophysical Properties Research Laboratory reported that
> Super Therm stopped 99.5% of the heat conducted in their tests.  In
> fact, Thermophysical Properties Research Laboratory conducted a
> test that clearly and unequivocally proved that a coat of Super
> Therm with a thickness no bigger than the a human hair produces
> an insulation rating that is equivalent to six to eight inches of
> comparable fiberglass insulation.  Imagine that.  Super Therm
> stops heat better than a wall full of harmful fiberglass insulation.

50.     Later, Defendants circulated to distributors a May 2, 2013 two-sentence letter from VTEC Laboratories, Inc. to Pritchett, which claims: "SuperTherm can perform as an equivalent R 19 based upon application and test method."

51.     In or about 2017, Superior Products circulated to its distributors a report prepared for it by Inn Choi, Ph.D, in which Choi claims, "a 10-mil [0.01-inch] thickness of SuperTherm is the same as 6 [inches] of fiberglass in Thermal Conductivity."  Choi states that he did not conduct independent testing, and instead reviewed summaries of tests by others provided to him by Defendants without access to the test reports.  At least one distributor then posted the report on its website.

52.     Superior Products also claims that testing supports its R-value claims by comparing Super Therm to known insulation materials.  Defendants' 2008 brochure claims, for example, states: "Tests prove it.  SUPER THERM is the better option."  This appears next to a visual (shown above at ¶ 38) comparing a 0.01 thick coat of Super Therm to 10" fiberglass insulation, 8" of cellulose insulation, and 5.5" of polystyrene foam insulation.  **Exhibit B** at 5. The brochure further claims: "SUPER THERM outperforms and outlasts traditional insulation in lab tests and on the field."  **Exhibit B** at 6.

53.     After the FTC contacted Superior Products on their website and marketing materials, Defendants continued to claim that testing supports their R-value claims for Super Therm.  In a "Thermal Tutorial" section of Defendants' website, they claim that "Super Therm was tested in the lab and found to have" a "better" R-value, by about 70%, than a test sample of 3-inches of fiberglass.

54.     Additionally, Defendants claim that NASA testing supports their insulation claims.  A page of Superior Products's 2015 brochure compares Super Therm to "traditional insulation" and Defendants claims: "Super Therm passed NASA testing with Best Test Result." **Exhibit D** at 3.  Next to that claim is a picture of the Space Shuttle.  Defendants claim that Super Therm is based on the ceramics used by NASA to protect the Space Shuttle and that "Super

Therm® was designed and developed with the assistance of NASA, a fact that can be substantiated."

**DEFENDANTS USE A NETWORK OF DISTRIBUTORS TO SPREAD THEIR CLAIMS**

55.     Superior Products sells Super Therm across the United States through authorized distributors and provides them with marketing materials.  Internationally, the company claims to have distributors in at least 40 countries.

56.     Superior Products provided its distributors with product brochures, reports, letters, graphs, charts, and videos created by or for Superior Products that contain Defendants' claims. The distributors, in turn, spread those claims throughout the United States.  Predominately, they did this on their own websites, oftentimes using the exact materials and wording created by Defendants.

57.     Superior Products has 15 distributors who sell its products in the United States.

58.     Eleven of those 15 distributors have identifiable websites.  Of those 11, eight prominently repeated Defendants' R-value and energy savings claims in April 2019 or later. They do this often by re-publishing Defendants' materials or making claims based upon the materials distributed by Defendants.  For example:

> a.   **Arizona Superior Coatings** claims that Super Therm has an "R-19 equivalent rating.  (Equal to 6-8 inches of fiberglass)" when applied 0.01 inches thick.  The distributor claims Super Therm is "Approved" to achieve an "RE19" rating when applied to the outside *or inside* of a building.  The distributor makes multiple energy savings claims about Super Therm, such as "SAVE UP TO 35% ON YOUR UTILITY BILLS!" and that it produces "[e]nergy savings of 20-70% for air-conditioned buildings."  It also claims: "Super Therm can be used as

replacement for traditional insulation on most substrates and in most conditions."
The distributor's website includes three videos.  In the first, the distributor's
owner, Gary Collins, claims: "when applied to your home, you can experience as
much as a 45-50% reduction in your utility bill."  In the second video, it is
claimed "[w]ith one coating at 16mils wet, or 10mil dry [*i.e.,* 0.01 inches], you're
going to get an R-20 R-factor equivalence."  In the third video, it is claimed that
Super Therm "achieve[s] an R-19 insulation value, as tested by independent
laboratories, or the equivalent of 6-8 inches of traditional fiberglass batt
insulation, with merely a 7 dry mil [i.e., 0.007 inches] coating."

b. **Coating Solutions** of Texas claims that using Super Therm provides insulation
"[c]omparable to an R19 effect" and that it can be used to "replac[e] the 6 to 8
inches of traditional insulation to block initial heat load."  The distributor
republishes a document prepared by Superior Products that claims: "Super Therm
has a "R-19 Equivalent Rating (equal to 6-8 inches of fiberglass)[sic] Thickness
of a business card, but outperforms fiberglass in laboratory and field testing;"
"SUPER THERM (R-19);" and "Super Therm is a certified insulator providing an
R-19 equivalent."  The distributor also claims, "Super Therm® can provide
energy savings of 20-70%."

c. **DW Pearce Enterprises Ltd.** dba Eagle Specialized Coatings and Protected
Environments of Canada (serving parts of the United States) republishes many of
the R-value tests and documents prepared by or for Superior Products.  These
documents claim "R19 is achieved" using Super Therm or that "RE19" is possible
with a coating 0.01-inches thick.  The distributor further claims Super Therm is a

"RE19 [n]on-deteriorating [i]nsulation," has a "[t]hermal [b]enefit [e]quivalent to R19," "provides a thermal benefit equivalent to R19 at the very least," and that painting asphalt roof shingles with Super Therm provides "an additional EFFECTIVE R19 insulation."  It also claims, based on purported testing paid for by Superior Products, "[w]hen SuperTherm is applied at 10 mils [0.01 inches], the improvement to the R Value [of the material to which it is applied] is 68%.  Based on the 68% improvement ratio, a minimum R13 material improves to R21.8 by applying 1 coat of SuperTherm."  Elsewhere the distributor claims applying Super Therm to a building will result in "making a 60% improvement" in the structure's R-value.  The distributor also includes an article attributed to bobvila.com with the claim: "SUPER THERM . . . carries an R value of R-19."

d. **Innovative Coatings Technologies** of Colorado claims Super Therm has an "R-19 Equivalent Rating (equal to 6-8 inches of fiberglass)," an "R-19 equivalency," and provides an "insulation value equivalent to R19" when applied 0.01 inches thick ("only the thickness of a business card").  The distributor also claims that using Super Therm "[s]aves [e]nergy [u]sage of 20-70% for air-conditioned buildings during the warmer months, averaging 25%-35% annual total utility savings."  It repeats other energy savings claims made by Superior Products, such as "30% utility savings on homes in Florida," "76% less energy usage as compared to fiberglass and rock wool" in a home, and a "78% reduction in total energy consumption" of a commercial building.

16

e. **RBG Constructors, Inc.** of Mississippi has a video with the following statement about Super Therm: "With one coating at 16mils wet, or 10mil dry, you're going to get an R-20 R-factor equivalence."

f. **Superior Coatings International, Inc.** of California claims Super Therm has an "R-19 Equivalent Rating . . . replacing the 6 to 8 inches of traditional insulation to block initial heat load" and that "Super Therm has been tested to have an RE-19 value compared to traditional insulation." It also makes the claim that "[a] layer of Super Therm, the thickness of a business card, has the same insulation value as 6 inches of traditional insulation." The distributor repeats claims by Superior Products that "Super Therm can provide energy savings of 20-70%," can result in "saving between 40 and 60 percent on your next power bill," and that "Super Therm is 296% more effective than traditional insulation under identical conditions and shown to be stable all day in field studies by Sony, UPS and others."

g. **Superior Products Coatings, Inc.** of Georgia claims: "Because of special ceramic used Super Therm has a high emissivity, the ability to block heat transfer, block air and moisture infiltration, this results in a performance, comparison wise, of better than a R-19." The distributor uses the visual shown in ¶ 36, *supra,* and the claim, "[i]n fact, a layer of SUPER THERM no thicker than a single business card provides the same protection as 6 inches of fiberglass." For Sunshield, the distributor claims the product "[s]hatters air conditioning costs."

h. **Superior Coating Solutions LLC** of New York claims: "While Super Therm handles heat transfer differently than traditional insulation such as fiberglass,

spray foam, polyisocyanurate, or polystyrene, the overall heat loss/gain or energy savings would be comparable to that of using traditional R-19 insulation." It further claims that Super Therm results in energy savings of "20-70% depending on use" and claims, "Super Therm is 296% more effective than traditional insulation under identical conditions and shown to be stable all day in field studies by Sony, UPS and others."

59.     Additionally, distributors make claims directly to consumers. A Superior Products distributor told a consumer in 2017: "The Super Therm coating application is a thick as a business card and carrying an Re = 19 which results in a very thin ceramic coating that repels sunlight heat and keeps internal heat from escaping through the cold roof."

## DEFENDANTS' R-VALUE, R-VALUE EQUIVALENT, AND ENERGY SAVINGS CLAIMS ARE FALSE OR UNSUBSTANTIATED

60.     Super Therm and Sunshield do not significantly restrict heat flow, let alone to the extent claimed by Defendants. Indeed, the R-value of Super Therm applied to the thickness Defendants instruct is considerably less than R-1.

61.     In 2009, the Cold Climate Housing Research Center ("Climate Center"), a group not affiliated with Defendants, tested Super Therm and a similar product by a different manufacturer. The Climate Center's report concluded: "Neither product contributed to the R-value of the building material on which they were applied" and "[t]he coatings did not demonstrate an energy savings in the realistic box tests we conducted."

62.     In January 2012, TPRL, the laboratory that Defendants claim had determined Super Therm has an R-19 value, rebuked Defendants' claim. Under the title, "Insulation Paint Claims," TPRL posted this warning on its website:

> Beware of Insulated paint or ceramic type products that claim wild
> insulation values.  TPRL Inc. would like to counter mis-
> information concerning various claims about insulated paint
> products that our company has tested . . . .  If you find a copy of
> [sic] TPRL 1780 report [*i.e.,* the report on Super Therm] on the
> web you will notice that no R values are in the report.  Our
> company did provide a memo that stated that a R19 value was
> possible under certain conditions which included how the
> HotBox[sic] test was done.  The HotBox[sic] test, performed by
> another company, used a coating of insulated paint on top of a[sic]
> insulating media to get a R19 value.  In real world conditions you
> will not get a R value of 19 from these insulated paints.

63.     Based on the data compiled by TPRL in its original report, the R-value of Super

Therm can be determined to be approximately R-0.00265.

64.     In 2017, Superior Products prepared an energy savings analysis for a potential

client that more accurately reflected the true R-value of Super Therm.  In their calculations,

Defendants identified Super Therm as having an R-value of R-0.00258 when applied 0.01 inches

thick.

65.     Most recently, Superior Products admitted during the FTC's investigation: "Super

Therm is a coating and cannot have a R-value or a R-value equivalency based upon established

criteria . . . . [Superior Products] clearly understands that a coating such as Super Therm cannot

have a R-value."

66.     This admission mirrors a prior acknowledgment by Defendant Pritchett.  In

October 2009, an energy efficiency newsletter published a response by Pritchett to the Climate

Center report described in ¶ 61, which had concluded after testing that Super Therm did not

contribute to a building's R-value.  In response, Pritchett conceded: "Super Therm does not have

an R value because an R value measures *only* thermal resistance (absorb and resist heat transfer)

and requires thickness."

67.     Despite these concessions, Defendants continued to make numerous R-value, R-value equivalency, and energy savings claims in their marketing materials, in public statements, and on the Superior Products website when the FTC contacted them in April 2019.  While Defendants removed some false or unsubstantiated claims, they continue to make others.

## DEFENDANTS' CLAIMS ARE MATERIAL

68.      Defendants tout their products' purported R-values, insulating benefits, and energy saving capabilities to consumers as a basis of superiority over paints and other coatings.

69.     Defendants state in marketing materials and public statements, for example, that:

   a.   "We estimate a home can save up to 40 to 50 percent in energy costs using our product."

   b.   Using Super Therm results in a "26% - 30% increase in energy efficiency."

   c.   Using Super Therm results in "40% savings in A/C operational cost" and 22% in "total utility savings."

   d.   Super Therm has been "[s]hown in field usage to save between 40% and 70%."

## DEFENDANTS PROVIDED THE MEANS AND INSTRUMENTALITIES FOR THE COMMISSION OF DECEPTION

70.     Defendants provided their promotional materials, third party reports, and related documents containing false and deceptive claims to their distributors.

## VIOLATIONS OF THE FTC ACT

71.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  Misrepresentations and unsubstantiated claims constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I
## False or Unsubstantiated Performance Claims

72.     In numerous instances in connection with the advertising, promotion, offering for sale, or sale of Super Therm and Sunshield, as described in Paragraphs 23-44, Defendants have represented, directly or indirectly, expressly or by implication, that:

A.     Super Therm has an R-value of R-19, or provides a benefit equivalent to R-19.

B.     Sunshield has similar performance characteristics as Super Therm.

C.     Using Super Therm or Sunshield will save consumers a significant amount of money, including of up to 78% on existing energy bills.

73.     The representations set forth in Paragraph 72 are false and misleading and were not substantiated at the time the representations were made.

74.     Therefore, the making of the representations as set forth in Paragraph 72 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II
## False Establishment Claim of R-values

75.     In numerous instances in connection with the advertising, promotion, offering for sale, or sale of Super Therm and Sunshield, as described in Paragraphs 45-54, Defendants have represented, directly or indirectly, expressly, or by implication, that testing establishes an R-value or R-value equivalent of R-19 for Super Therm.

76.     In truth and in fact, testing does not establish these R-values.

77.     Therefore, the representations in Paragraph 75 are thus false or misleading and constitute deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III
## Means and Instrumentalities

78.     By furnishing distributors with promotional materials for Super Therm, including

materials such as brochures and third-party reports, that make false or misleading

representations,  Defendants have provided the means and instrumentalities that constitute

deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a).

## CONSUMER INJURY

79.     Consumers are suffering, have suffered, and will continue to suffer substantial

injury because of Defendants' violations of the FTC Act.  In addition, Defendants have been

unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this

Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm

the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

80.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant

injunctive and such other relief as the Court may deem appropriate to halt and redress violations

of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable

jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and

remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

81.     Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C.

§ 53(b), and the Court's own equitable powers, requests that the Court:

A.  Award Plaintiff such ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction;

B.  Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.  Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

## **REQUEST FOR PLACE OF TRIAL**

Plaintiff hereby requests that trial of the above-entitled matter be held in the City of Kansas City, Kansas

* * *

Respectfully submitted,

STEPHEN R. MCALLISTER
United States Attorney

s/ Jon P. Fleenor_____
JON P. FLEENOR #14002
Assistant United States Attorney
Office of the United States Attorney
   For the District of Kansas
500 State Avenue, Suite 360
Kansas City, KS  66101
Tel:  913-551-3561
Fax:  913-551-6541
Jon.Fleenor@usdoj.gov

Local Counsel for Plaintiff
Federal Trade Commission

Dated: July 28, 2020

ALDEN ABBOTT
General Counsel

s/ Jonathan W. Ware_____
JONATHAN W. WARE (DC SBN 989414)
*Pro hac admission pending*
Federal Trade Commission
600 Pennsylvania Ave., NW
Maildrop CC-9528
Washington, DC 20580
Tel: 202-326-2726
Fax: 202-326-3197
jware1@ftc.gov

Counsel for Plaintiff Federal Trade
Commission