## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-2366-HLT-GEB** |
| | ) | |
| **SUPERIOR PRODUCTS** | ) | |
| **INTERNATIONAL II, INC., and** | ) | |
| **JOSEPH E. PRITCHETT,** | ) | |
| | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on Plaintiff FTC's Motion to Compel Defendants **(ECF No. 100)** to produce documents related to foreign sales of their products. The basis for the motion is Plaintiff's claims Defendants violated the FTC Act's Trade Regulation Rules concerning the Labeling and Advertising of Home Insulation, 16 C.F.R. Part 460 from May 13, 2020, to the present. On December 29, 2021, the Court heard oral argument. After careful consideration of all briefing, hearing arguments from counsel, and as further discussed below, the Court **GRANTS** Plaintiff's motion.

## I.   Procedural Background[1]

The procedural background in this matter was fully set out in this Court's Order on Plaintiff's Motion for Leave to Amend its Complaint[2] and will not be wholly repeated here. But it is necessary that a summary of the relevant procedural background be set out herein.

Plaintiff Federal Trade Commission brought this case against Defendants Superior Products International II, Inc. ("Superior Products") and Joseph Pritchett ("Pritchett") seeking injunctive or other relief, including restitution under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), for deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. Two of Defendants' roof and wall coating products are at issue here; Super Therm and Sunshield. Plaintiff alleges Defendants, in their marketing of the products, made false claims regarding the products' R-values; a measurement of the insulating ability of the material. Plaintiff also alleges Defendants falsely represented testing supports the R-values claims regarding Super Therm. According to Plaintiff, this conduct constitutes unfair or deceptive practices affecting commerce which is prohibited by the FTC Act.

With the Court's permission, Plaintiff filed its First Amended Complaint.[3] Plaintiff adding a claim for violation of the Trade Regulation Rule Concerning the Labeling and

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), First Amended Complaint (ECF No. 90), and Answer to Amended Complaint (ECF No. 91). This background information should not be construed as judicial findings or factual determinations.

[2] ECF No. 113.

[3] ECF No. 90.

Advertising of Home Insulation, 16 C.F.R. Part 460 ("R-value Rule") from May 13, 2020, to the present under 15 U.S.C. § 57a. In the new claim, Plaintiff alleges Defendants made express and implied R-value claims that exceeded the actual R-value of Super Therm as established by testing under the R-value Rule and were therefore false.

In their answer, Defendants deny they violated neither the FTC Act nor the R-value Rule. Although, Defendants admit they previously disseminated limited materials that described Super Therm's energy savings performance in terms of R-value, they deny the claims about the energy saving performance of Super Therm are false or misleading. Additionally, Defendants deny ever having made R-value claims regarding Sunshield, and they deny currently making any such claims for either product.

## II.     Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless the moving party has "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Based upon review of the declaration of counsel regarding the parties' conferral process, as well as discovery conference where the Court and the parties discussed the issues prior to the filing of the current motion, the Court finds the parties have complied with D. Kan. Rule 37.2.

## III.    Plaintiffs' Motion to Compel Defendants (ECF No. 100)

On May 13, 2020, amendments to the R-value Rule took effect, and in essence expanded and clarified its scope. The R-value Rule, which previously applied only to the

home insulation industry, was expanded to include non-insulation products, such as Defendants' Super Therm and Sunshield roof and wall coatings, as long as the products are "marketed in whole or in part to reduce residential energy use by slowing heat flow."[4] 16 C.F.R. § 460.22 requires those who make an R-value claim for a non-insulation product to "test the product pursuant to § 460.5," and any "advertised R–value claims must fairly reflect the results of those tests."

After Plaintiff filed its First Amended Complaint to add a claim regarding Defendants' purported violation of the R-value Rule, Plaintiff served three requests for production seeking documents related to its R-value Rule claims from May 13, 2020 to the present. Two of those requests, RFP Nos. 31 and 32, are at issue here. In RFP No. 31, Plaintiff seeks:

> Documents and Communications sufficient to Identify all purchasers, installers, distributors, dealers, and end users of Super Therm and Sunshield regardless of location; the dates(s) of their purchases(s); and the purchase price(s) they paid for those products from and including May 13, 2020 to the present.

And in RFP No. 32, Plaintiff seeks:

> Documents and Communications sufficient to show the net sales, gross sales, and profit figures for YOUR sales of Super Therm and Sunshield, respectively, regardless of location of the buyer, from and including May 13, 2020 to the present.

---

[4] 16 C.F.R. §§ 460.3, 460.4, and 460.22.

Defendants object to both requests as "irrelevant, unreasonable, unduly burdensome, and not proportional to the needs of the case."[5] Specifically, Defendants object to each request "for international sales information and customer identification as outside the scope of the litigation."[6] Despite their objection, and in partial response to RFP Nos. 31 and 32, Defendants produced invoices for domestic sales without limitation as to residential or commercial buyer or limitation based upon end user. Defendants also produced a tally of their gross domestic sales. However, Defendants withheld documents related to international sales based upon their objections. After the parties conferred and could not reach an agreement regarding the documents related to international sales, Plaintiff filed the current motion.

## A.    Parties' Arguments

### 1.    Plaintiff's Position

Plaintiff argues several points in support of its position:

a)    the documents to identify foreign purchasers and sales are relevant to establish the monetary relief it seeks and to identify customers who may rebut Defendants' claims of truthfully informed and wholly satisfied customers;

b)    the documents sought are proportional to the needs of the case; and

c)    the R-value Rule is not limited to domestic sales for residential use.

---

[5] ECF No. 102-2 at 7.
[6] *Id.*

### 2.    Defendants' Position

In their defense, Defendants argue:

a)    Congress has not given the FTC jurisdiction over wholly foreign conduct;

b)    the R-value Rule is limited to products sold for residential use; and

c)    the document requests are not proportional to the needs of the case.

## B.    Analysis

### 1.    Legal Standard

Pursuant to Fed. R. Civ. P. 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[7] Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[8] "Information within this scope of discovery need not be admissible in evidence to be discoverable."[9] Discovery

---

[7] Fed. R. Civ. P. 26(b)(1).
[8] Williams v. UnitedHealth Grp., No. 18-2096-HLT, 2020 WL 528604, at *1 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.,* No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).
[9] Fed. R. Civ. P. 26(b)(1).

should be allowed "unless *it is clear* that the information can have *no possible* bearing" on the claims or defense of a party.[10]

### 2.      Production of documents related to foreign sales and customers

Defendants argue any documents regarding foreign sales and foreign customers are not relevant to Plaintiff's claims because it may not obtain monetary relief for "wholly foreign conduct." The parties agree Plaintiff's statutory authority to enforce its rules as to foreign conduct is found in the FTC Act at 15 U.S.C. § 45. They, of course, disagree about its application. "The [Federal Trade] Commission is hereby empowered and directed to prevent persons, partnerships, or corporations…from using…unfair or deceptive acts or practices in or affecting commerce."[11] Unfair or deceptive acts or practices "includes such acts or practices involving foreign commerce that - (i) cause or are likely to cause reasonably foreseeable injury within the United States; or (ii) involve material conduct occurring within the United States."[12] "All remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph [15 U.S.C. § 45(a)], including restitution to domestic or foreign victims."[13]

In their briefing, Defendants admit 15 U.S.C. § 45(a)(4) gives the FTC "some extraterritorial jurisdiction," but argue the FTC Act does not "reach conduct that has no

---

[10] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citing *Scott v. Leavenworth USD No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (emphasis in original)).

[11] 15 U.S.C. § 45(a)(2).

[12] 15 U.S.C. § 45(a)(4)(A).

[13] 15 U.S.C. § 45(a)(4)(B).

relationship with the United States."[14] In essence, Defendants argue foreign sales of Super Therm and Sunshield neither involve material conduct within the United States nor cause or is likely to cause reasonably foreseeable injury within the United States.

However, during oral argument Defendants argued, citing *Nieman v. Dryclean U.S.A. Franchise Co., Inc.*,[15] the FTC Act does not apply extraterritorially, at all. The decision in *Nieman*, was based upon the definition of "commerce" in the Act in 1994.[16] The court in *Nieman* notes,

> The FTC Act provides that "unfair or deceptive acts or practices in or affecting commerce [ ] are hereby declared unlawful. 15 U.S.C. § 45(a)(1) (1994). The Act defines "commerce" to mean "commerce among the several States or with *foreign nations*." 15 U.S.C. § 44.[17]

The *Nieman* court found the "boilerplate language" in the definition of commerce, also found in other congressional Acts, none of which had been held to apply extraterritorially persuasive on the question of whether the FTC Act should reach overseas.[18] *Nieman* is an Eleventh Circuit decision, based upon the language of the Act before it was amended to specifically include two instances when acts or practices involving foreign commerce are included in the definition of unfair or deceptive acts, and although recognizable, this Court declines Defendants' invitation to adopt its finding based on the facts and circumstances of the *Nieman* case. Notably, Courts interpreting the FTC Act after amendment of 15

---

[14] Response, ECF No. 103 at 6.
[15] 178 F.3d 1126, 1131 (11th Cir. 1999).
[16] *Id.* at 1130.
[17] *Id.* (emphasis added).
[18] *Id.*

U.S.C. § 45(a) have found "Section 5's prohibition on 'unfair or deceptive practices' extends to foreign-based conduct."[19]

Because courts, after the amendment of 15 U.S.C. § 45(a) have found the provision can apply extraterritorially, the Court will now look at whether Defendants' conduct, based upon Plaintiff's allegations, could fall within the two instances when foreign commerce comes within the definition of unfair or deceptive acts or practices under the FTC Act, and is therefore relevant to Plaintiff's claims.

> **a.** **Unfair or deceptive acts or practices involving foreign commerce that cause or are likely to cause reasonably foreseeable injury within the United States**

Defendants, who primarily focus on whether the actions of Superior Products and their foreign distributors involve material conduct occurring in the United States, avoid the instance of whether their actions cause or are likely to cause reasonably foreseeable injury in the United States. They argue even if consumers in the United States saw marketing materials with purportedly false R-value claims placed into the marketplace by their foreign distributors, the consumer would purchase Defendants' products from a domestic distributor and thus not involve foreign commerce. But in the foreseeable situation where a consumer in the United States sees a purportedly false R-value claim made by Defendants' foreign distributors and makes a purchase of Defendants' products, *if* the purchase is based upon those false claims, foreseeably a U.S. consumer would be injured.

---

[19] *FTC v. Apex Capital Group*, No. 18-9573-JFW, 2019 WL 9077469, at *9 (C.D. CA Sept 16, 2019) (citing *FTC v. Centro Natural Corp.*, No. 14-23879, 2014 WL 7525697, at *4-5 (S.D. FL Dec. 10, 2014) and *FTC v. Western Union Co.*, 579 Fed. Appx. 55, 56 (2d Cir. 2014) (compelling company to produce foreign documents pursuant to Section 5(a)(4)(A) of the FTC Act)).

And, if as Defendants assert, such a purchase would be made through one of Defendants' U.S. distributors, there is further proof the actions of Defendants' foreign distributors caused an injury in the United States.

In support of its claim that Defendants, through their foreign distributors, made false R-value claims which cause or are likely to cause reasonably foreseeable injury within the United States, Plaintiff in its First Amended Complaint alleges: 1) Defendants' foreign distributors, at least one of which also serves parts of the United States, made false R-value representations on their websites after May 13, 2020;[20] 2) Defendant Pritchett approved the use of statements that Super Therm blocked "95% of heat" and was "99% BTU Rating Tested" in a marketing video by a Superior Product's foreign distributor because the distributor was not in the United States. Then Pritchett sent a link to the video to Superior Products' distributors, including those in the United States, for use in their marketing;[21] and 3) "[c]onsumers in the United States, including residential homeowners, see the claims made by Superior Products' foreign distributors and contact them for information."[22] Through discovery, Plaintiff further alleges it learned Defendant Superior Products has never prohibited its foreign distributors from using R-value claims about Super Therm which are not supported by the required testing and those R-value claims are visible to consumers in the United States.[23]

---

[20] See paragraphs 68(a), (d), and (e) and 69 of Plaintiff's First Amended Complaint, ECF No. 90 at pp. 19-22.

[21] See paragraph 69 of Plaintiff's First Amended Complaint, ECF No. 90 at pp. 21-22.

[22] See paragraph 70 of Plaintiff's First Amended Complaint, ECF No. 90 at p. 22.

[23] ECF No. 101-2 at pp. 30-31 (p. 40, ll. 1-6 and p. 43, l. 8-p. 44, l. 14).

Based upon a reading of the plain text of 15 U.S.C. § 45(a)(4)(A) and a review of the Plaintiff's allegations in its First Amended Complaint as supplemented with facts learned through discovery, Plaintiff alleges facts upon which, if proven true, a jury could find Defendants' actions cause or are likely to cause a reasonably foreseeable injury within the United States.

        **b.**    **Unfair or deceptive acts or practices involving foreign commerce that involve material conduct occurring within the United States**

Defendants argue the foreign sales of Super Therm and Sunshield by foreign distributors do not involve material conduct in the United States because no direct payment is made in the United States. In response, Plaintiff argues far from being "wholly foreign transactions" as Defendants allege, the "deceptive claims, control of those claims, the products, and payment for the products all flowed through Kansas, thereby making them subject to the FTC Act."[24]

In support of its claim that Defendants' purported unfair or deceptive acts or practices involve material conduct occurring within the United States, Plaintiff in its First Amended Complaint expressly allege: 1) Defendant Superior Products, a Kansas corporation with its principal place of business in Shawnee, Kansas, advertises, markets, distributes, and sells Super Therm and Sunshield coatings to consumers;[25] 2) Defendant Pritchett, the President of Superior Products, directs or controls the actions of Superior

---

[24] ECF No. 101 at 10.

[25] See paragraph 10 of Plaintiff's First Amended Complaint, ECF No. 90 at p. 3.

Products;[26] 3) Defendants disseminate advertising and other promotional materials for Super Therm and Sunshield, including through advertisements on their website and marketing materials for their distributors, both foreign and domestic;[27] 4) these marketing materials describe Super Therm's performance in terms of R-values, make purported false and deceptive claims, make reference to residential use of the product, and continued to be used after May 13, 2020;[28] and 5) Pritchett reviewed and approved a marketing video provided by international distributor NEOtech with claims that Super Therm blocked "95% of heat" and was "99% BTU Rating Tested" which NEOtech used internationally, and Pritchett sent to Superior Products' U.S. employees and distributors for use domestically.[29] Through discovery, Plaintiff alleges it determined Defendants produce Super Therm and Sunshield in the U.S.[30] and Superior Products approves all distributor marketing and reviews distributor websites for content.[31]

Again, based upon a reading of the plain text of 15 U.S.C. § 45(a)(4)(A) and a review of the Plaintiff's allegations in its First Amended Complaint as supplemented with facts learned through discovery, the Court finds Plaintiff alleges facts upon which, if

---

[26] See paragraph 11 of Plaintiff's First Amended Complaint, ECF No. 90 at p. 3.
[27] See paragraphs 17, 63, 65, 68 of Plaintiff's First Amended Complaint, ECF No. 90 at pp. 4, 15, and 19.
[28] See paragraphs 18, 67(c), 68(a), (d), and (e), and 82 of Plaintiff's First Amended Complaint, ECF No. 90 at pp. 4, 16-17, 19-20, and 24.
[29] See paragraph 68(e) of Plaintiff's First Amended Complaint, ECF No. 90 at p. 20.
[30] ECF No. 101-2 at 32 (p. 65, l. 1-p. 66, p. 66, l. 9).
[31] ECF No. 101-2 at 33 (p. 198, l. 9-p. 199, l. 16).

proven true, a jury could find Defendants' actions involved material conduct within the United States.

As the Court noted during oral argument, the decision of whether the FTC Act applies extraterritorially to foreign sales, and if so, to which foreign sales is for another day. But where courts have, after the amendment of 15 U.S.C. § 45(a), found the provision can apply extraterritorially, and where it has been established Plaintiff's Amended Complaint alleges facts upon which, if proven true, a jury could find either Defendants' actions cause or are likely to cause a reasonably foreseeable injury within the United States or Defendants' actions involved material conduct within the United States, the Court finds Defendants have not shown the documents regarding foreign sales and/or foreign customers responsive to RFP Nos. 31 and 32 have *no possible* bearing on the Plaintiff's claims. Now, the Court will turn to the question of whether Defendants' additional production is limited to solely foreign residential sales.

### 3. Whether additional production of documents is limited solely to foreign <u>residential</u> sales

To begin, the Court notes Defendants did not object to the production of commercial and industrial documents in their response to RFP Nos. 31 and 32.[32] Rather, Defendants did object to the requests as irrelevant, unreasonable, unduly burdensome, and not proportional to the needs of the case because they are not limited to "domestic purchasers,

---

[32] ECF No. 101-2 at 7.

installers, distributors, dealers, and end users of Super Therm and Sunshield."[33] Defendants specifically object to the request for "international sales information and customer identification as outside the scope of litigation."[34] Additionally, Plaintiff alleges and Defendants do not dispute they produced domestic commercial and industrial sales information in response to RFP No. 31 and 32.

It is not until Defendants' responsive pleading to Plaintiff's motion to compel that Defendants raise the relevance objection as to any request for Defendants' foreign sales to commercial and industrial customers; because the R-value Rule only applies to sales for residential use. Courts in this district will deem waived any objections not asserted in the initial response to a discovery request but raised in response to a motion to compel.[35] Although the Court could technically find Defendants' late objection to requests for sales made to commercial and industrial customers is waived, it does not and will review the substance of the parties' arguments regarding this objection.

The Court is not inclined to interpret or rewrite the relevant regulations as suggested by Defendants. The amendments to the R-value Rule which took effect in May of 2020, broadened the scope of the Rule to include coating products, like Defendants Super Therm and Sunshield, as long as they were marketed, at least in part, for residential use. Under the

---

[33] *Id.*

[34] *Id.*

[35] *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 657 (D. Kan.2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D. Kan.1999)). *See also Starlight Int'l, Inc. v. Herlihy,* 181 F.R.D. 494, 496 (D. Kan.1998) (quoting Fed.R.Civ.P. 33(b)(4) ("untimely objections are 'waived unless the party's failure to object is excused by the court for good cause shown.'")).

Tenth Circuit's "longstanding approach to regulatory interpretation," a court begins with the "text of the regulation, and, if the meaning is clear, look no further."[36] When interpreting a regulation, a court begins by "examining the plain language of the text, giving each word its ordinary and customary meaning."[37] "If, after engaging in this textual analysis, the meaning of the regulation[ ] is clear, our analysis is at an end, and we must enforce the regulation[ ] in accordance with [its] plain meaning."[38] It is only if the meaning of the text is not plain that a court looks to sources outside the regulation.[39]

Thus, it may be helpful to look at the relevant regulations. Below is a comparison of the regulations, before and after the amendment became effective May 13, 2020.

### § 460.2 What is home insulation.

<Text of section effective until May 13, 2020.>

Insulation is any material mainly used to slow ~~down~~ heat flow. It may be mineral or organic, fibrous, cellular, or reflective ~~(aluminum foil)~~. It may be in rigid, semirigid, flexible, or loose-fill form. Home insulation is for use in old or new homes, condominiums, cooperatives, apartments, modular homes, or mobile homes. It does not include pipe insulation. It does not include any kind of duct insulation except for duct wrap. **It also includes insulation developed and marketed for commercial or industrial buildings that is also marketed for and used in residential buildings.**

---

[36] *Scalia v. Wynnewood Refining Co., LLC,* 978 F.3d 1175, 1181 (10th Cir. 2020).
[37] *Id.* (citing *Mitchell v. Comm'r,* 775 F.3d 1249 (10th Cir. 2015)).
[38] *Id.*
[39] *Scalia* at 1181 (citing *Kisor v. Wilkie,* 139 S.Ct. 2400, 2414 (2019)).

### § 460.3 Who is covered.

<Text of section effective until May 13, 2020.>

You are covered by this ~~regulation~~**part** if you are a member of the home insulation industry. This includes individuals, firms, partnerships, and corporations. It includes manufacturers, distributors, franchisors, installers, retailers, utility companies, and trade associations. Advertisers and advertising agencies are also covered. So are labs doing tests for industry members. If you sell new homes to consumers, you are covered. **If you make R-value claims for non-insulation products described in § 460.22, you are covered by the requirements of that section.**

### § 460.4 When the rules **in this part** apply.

<Text of section effective until May 13, 2020.>

You must follow ~~these~~**the** rules **in this part** each time you import, manufacture, distribute, sell, install, promote, or label home insulation. You must follow them each time you prepare, approve, place, or pay for home insulation labels, fact sheets, ads, or other promotional materials for consumer use. You must also follow them each time you supply anyone covered by this ~~regulation~~**part** with written information that is to be used in labels, fact sheets, ads, or other promotional materials for consumer use. Testing labs must follow the rules unless the industry members ~~tells~~**tell** them, in writing, that labels, fact sheets, ads, or other promotional materials for home insulation will not be based on the test results. **You must follow the requirements in § 460.22 each time you make an R-value claim for non-insulation products marketed in whole or in part to reduce residential energy use by slowing heat flow.**

**§ 460.22** ~~Tax~~**R-value** claims **for non-insulation products**.

~~<Section redesignated as 16 CFR § 460.23 effective May 13, 2020; see 84 FR 20790.>~~

~~Do not say or imply that your product qualifies~~**If you make an R-value claim** for a ~~tax benefit unless it is true~~**product, other than a fenestration-related product, that is not home insulation and is marketed in whole or in part to reduce residential energy use by slowing heat flow, you must test the product pursuant to § 460.5 using a test or tests in that section appropriate to the product. Any advertised R-value claims must fairly reflect the results of those tests. For the purposes of this section, fenestration-related products include windows, doors, and skylights as well as attachments for those products**.

Home insulation is defined at 16 C.F.R. § 460.2. It is insulation "for use in old or new homes, condominiums, cooperatives, apartments, modular homes or mobile homes."[40] Although the definition as amended was clarified to explicitly include "insulation developed and marketed for commercial or industrial buildings that is also marketed for and used in residential buildings," it does not include non-insulation products such as Super Therm and Sunshield.[41] These products are not home insulation.

Defendants would have the Court write the "home" or "residential" limitation that is explicit in the definition of "home insulation" into the regulations dealing with non-insulation products. They view 16 C.F.R. §460.3, regarding the R-value Rule's coverage, and 16 C.F.R. § 460.4, regarding when the R-value Rule applies, as only applying to "member[s] of the home insulation industry" or those making R-value claims "while operating in the home insulation industry."  This interpretation is not supported by the plain

---

[40] 16 C.F.R. § 460.2.
[41] *Id.*

language of these sections. Section 460.3 states "[y]ou are covered by this part if you are a member of the home insulation industry."[42] It goes on to identify those who comprise the home insulation industry such as manufactures, distributors, franchisors, etc.[43] The section then identifies people and entities who are also covered by the rule such as advertising agencies and labs doing tests for industry members.[44] And, lastly it adds "[i]f you make R-value claims for non-insulation products described in § 460.22 you are covered by the requirements of that section."[45]

Pursuant to § 460.4, the home insulation industry must "follow the rules in this part" each time they: 1) "import, manufacture, distribute, sell…home insulation;" 2) "prepare, approve, place or pay for home insulation labels…;" 3) and "supply anyone covered by this part with written information to be used in labels, fact sheets…."[46] Testing labs, identified as an entity also covered by the regulation in 16 C.F.R. § 460.3, must follow the rules "unless industry members tell them, in writing, that labels…for home insulation will not be based on the test results."[47] But, those who make R-value claims are not required to follow the "rules in this part," instead they must follow the requirements of § 460.22 "*each time* an R-value claim for non-insulation products marketed in whole or in part to reduce

---

[42] 16 C.F.R. § 460.3.
[43] "This includes individuals, firms, partnerships, and corporations. It includes manufacturers, distributors, franchisors, installers, retailers, utility companies, and trade associations." 16 C.F.R. § 460.3.
[44] "Advertisers and advertising agencies are also covered. So are labs doing tests for industry members. If you sell new homes to consumers, you are covered." 16 C.F.R. § 460.3.
[45] 16 C.F.R. § 460.3.
[46] 16 C.F.R. § 460.4.
[47] *Id.*

residential energy use" is made.[48] These regulations clearly distinguish between the home insulation industry, on the one hand, and those who make R-value claims regarding non-insulation products, on the other.

These two groups' obligations under the Rule are different. Those making R-value claims about non-insulation products must only follow the requirements set out in § 460.22. However, the members of the home insulation industry must follow the regulations regarding required information in labeling[49] and fact sheets, [50] required statements in advertisements containing an R-value,[51] keep certain testing records,[52] and more. Where the obligations regarding non-insulation products are set forth in 16 C.F.R. § 460.22, the Court must look at its language, which states:

> If you make an R–value claim for a product…that is not home insulation and is marketed in whole or in part to reduce residential energy use by slowing heat flow, you must test the product pursuant to § 460.5 using a test or tests in that section appropriate to the product. *Any advertised R–value claims* must fairly reflect the results of those tests.[53]

The regulation requires non-insulation products be tested using an approved test. And *any advertised R-value claim* must fairly reflect the results of the testing. The regulation clearly states it applies to "any advertised R-value claims" and the Court will not rewrite it as

---

[48] *Id.* (emphasis added).
[49] 16 C.F.R. § 460.12.
[50] 16 C.F.R. § 460.13.
[51] 16 C.F.R. § 460.18.
[52] 16 C.F.R. § 460.9.
[53] 16 C.F.R. § 460.22 (emphasis added).

Defendants suggest, limiting it to advertised R-value claims, "about *residential* energy use" when determining whether the documents regarding foreign commercial and industrial sales are relevant to Plaintiff's claims.

The Court understands another court on another day will ultimately decide whether or how Plaintiff's claims regarding violations of the R-value Rule are limited. But today, that determination has not been made. Plaintiff's new count in its First Amended Complaint alleges Defendants violated 16 C.F.R. § 460.22 in marketing Super Therm and Sunshield since May 13, 2020 without limitation to just domestic or residential sales. For the purposes of this motion, the Court finds the meaning of the regulation is clear based on the text of the regulation and is not limited to sales for residential use only. The text of the regulation is clear, and the Court does not need to view Defendants' arguments outside the plain text. Defendants have not shown it is clear the information sought in RFP Nos. 31 and 32 can have *no possible* bearing on Plaintiff's claims. Therefore, the information sought is relevant to Plaintiff's claims.

**4.      Whether the requests are proportional to the needs of the case**

In addition to their claim the requested documents are not relevant to Plaintiff's claims, Defendants also argue the requests are not proportional to the needs of the case. Plaintiff requests the information regarding Defendants' foreign sales, including its commercial and industrial sales, to help rebut Defendants' satisfied customer defense, relevant to its restitutionary remedy. Defendants argue the burden of the production far outweighs the benefits to Plaintiff because the restitutionary remedy only applies to

domestic residential sales. But, it is unclear why Defendants would produce their domestic commercial and industrial sales information if they truly believe that is all the regulation allows. Where Defendants produced documents related to commercial and industrial sales in their response to RFP Nos. 31 and 32, and based upon the reading of the plain text of the regulation, the Court finds the information is relevant to Plaintiff's claims, the Court additionally finds the information sought in RFP Nos. 31 and 32 is proportional to the needs of the case.

## IV.    Conclusion

Based upon the above and foregoing, the Court finds that the documents sought in response to Plaintiff's RFP. Nos. 31 and 32, including documents related to Defendants' foreign sales and customers - residential, commercial, and industrial, are relevant to Plaintiff's claims and proportional to the needs of the case.

**IT IS THEREFORE ORDERED** Plaintiff FTC's Motion to Compel Defendants **(ECF No. 100)** is **GRANTED.** Defendants shall produce documents and communications responsive to RFP Nos. 31 and 32 related to Defendants international sales, without limitation regarding residential, commercial, or industrial use or any limitation by end user from May 13, 2020, to the present no later than February 9, 2022.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 25th day of January, 2022.


<u>s/ Gwynne E. Birzer</u>
GWYNNE E. BIRZER
United States Magistrate Judge